IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY POLITE, MCKINLEI POLITE, GARY ROUNDTREE, GERRY LEWIS, and KENNIE BROWN,<br><br>　　*Plaintiffs,*<br><br>vs.<br><br>GENERAL DYNAMICS CORPORATION<br><br>　　*Defendant.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action 3:25-cv-2163<br><br>**JURY DEMANDED** |

## COMPLAINT AND JURY DEMAND

TO THE HONORABLE COURT:

Plaintiffs Corey Polite,  McKinlei Polite, Gary Roundtree, Gerry Lewis, and

Kennie Brown present their Complaint for unlawful discrimination in violation of

the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### PARTIES

1.　　Corey Polite is a citizen and resident of the United States, residing in

Kaufman County, Texas.

2.　　McKinlei Polite is a citizen and resident of the United States, residing

in Kaufman County, Texas.

*Original Complaint*　　　　　　　　　　　　　　　　　　　　　　　*Page 1*

3. Gary Roundtree is a citizen and resident of the United States, residing in Dallas County, Texas.

4. Gerry Lewis is a citizen and resident of the United States, residing in Dallas County, Texas.

5. Kennie Brown is a citizen and resident of the United States, residing in Dallas County, Texas.

6. Each of the Plaintiffs are Black or African American.

7. General Dynamics Corporation ("General Dynamics") is a foreign corporation.

8. General Dynamics employed Gerry Lewis, Corey Polite, McKinlei Polite, Gary Roundtree, and Kennie Brown. At the time of this Complaint, they are employed by General Dynamics; with the exception of Gary Roundtree and Corey Polite who have resigned. General Dynamics treated similarly situated employees who are not Black and who have not reported or opposed discrimination better than the Plaintiffs.

## JURISDICTION AND VENUE

9. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

10.    This is a suit authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue of this Court is pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## BACKGROUND

### Foreseeability of the Problem

12.    Discrimination and retaliation are foreseeable because businesses know that discrimination and retaliation are prevalent in the United States.

### The Purpose of the Law

13.    Foreseeability is important because the law is meant to be preventive.

14.    The federal anti-discrimination laws' primary objectives are prophylactic, chiefly aimed not to provide redress but to avoid harm.

15.    Prevention is the best tool to eliminate discrimination and retaliation in the workplace.

16.    Employers must take appropriate steps to prevent and correct discrimination and retaliation, including unlawful harassment.

17.    Corporations may be liable for punitive damages when they do not make good-faith efforts to prevent discrimination in the workplace to accomplish the objective of motivating employers to detect and deter discrimination violations.

18.    The right to expect that corporations hire managers and human resources (HR) representatives qualified to recognize and prevent discrimination and retaliation is essential to our community.

19.    The right to expect that corporations will adequately train managers and HR representatives to recognize and prevent discrimination and retaliation is essential to our community.

20.    The right to expect that corporations will supervise managers and HR representatives to recognize and prevent discrimination and retaliation is essential to our community.

21.    The right to expect that corporations will not discriminate in pay, promotion, transfer, discipline, work environment, or termination of employment is essential to our community.

22.    The right to expect that corporations will not retaliate against persons who report, in good faith, signs or red flags of discrimination or retaliation is essential to our community.

*Original Complaint*                                                                 *Page 4*

**General Dynamics Is a Global Corporation**

23.    General Dynamics is a United States federal contractor.

24.    General Dynamics knows that discrimination and retaliation are foreseeable as potential problems in its work and business place.

25.    General Dynamics intentionally discriminates against Black employees.

26.    General Dynamics' EEO-1 reports show the disparity of its treatment between its Black employees and non-Black employees.

**General Dynamic's Serious System Failure**

27.    General Dynamics has a system, scheme, or plan of discriminating against persons based on race and retaliating against persons when they oppose or report violations.

28.    General Dynamics fails to follow its written policies prohibiting discrimination and retaliation laws.

29.    General Dynamics hires managers and HR personnel who are not qualified to recognize and prevent discrimination and retaliation.

30.    General Dynamics fails to adequately train its managers and HR personnel to recognize and prevent discrimination and retaliation.

31.    General Dynamics fails to supervise its managers and HR personnel to ensure that they recognize and prevent discrimination and retaliation laws.

32.     General Dynamics fails to monitor the workplace for signs, symptoms, and red flags of discrimination and retaliation.

**Consequences of Failure to Enforce**

33.     The result is that General Dynamics treats employees and agents differently because of their race and then discriminates against Black employees after the employees and agents report concerns of violations.

34.     General Dynamics discriminated against the Plaintiffs because of their race.

35.     When some of the Plaintiffs reported and opposed discrimination, General Dynamics retaliated against them.

36.     The Civil Rights Act of 1866 is one of the most important laws in our country, obtained at the cost of a Civil War.

37.     Laws such as the Civil Rights Act of 1866 often are not enforced unless persons like the Plaintiffs have the courage to file lawsuits to enforce the law.

38.     Congress intended to empower individuals to act as private attorneys general in enforcing discrimination and retaliation laws.

39.     Plaintiffs are acting as private attorneys general in this case to enforce the law and aid in effectuating important congressional and public policies of the highest priority.

40.    General Dynamics has a pattern or practice of discrimination against a group of Black or African American employees.

41.    General Dynamics has a pattern or practice of retaliation against persons who oppose race discrimination.

42.    General Dynamics engages in discrimination and retaliation against a group of African American persons.

43.    General Dynamics's discriminatory and retaliatory actions are its regular practice, rather than an isolated instance.

44.    General Dynamics has a policy of discriminating and retaliating.

**THE PLAINTIFFS**

45.    General Dynamics employed the Plaintiffs at its manufacturing operations located at 19850 Interstate Highway 635, Mesquite, Texas, 75149.

46.    When General Dynamics hired each of the Plaintiffs, it knew that it paid Black employees less and promoted them less than other employees.

47.     General Dynamics' employment data at the time of the hires showed the pay disparity.

48.    General Dynamics knew it had a long history of race discrimination.

**GERRY LEWIS**

49. Gerry Lewis ("Gerry") began working for General Dynamics on June 10, 2024.

50. He was hired as a Welder II.

51. His supervisor is Senior Production Manager Necorian "Bo" Jones.

52. He has many years of welding experience.

53. He is the most skilled welder in the plant.

54. He is the most experienced welder in the plant.

55. Management replaced Gerry with two White very young inexperienced employees who had minimal welding experience and possessed limited welding skills.

56. When Gerry asked his supervisor why Gerry was replaced by lesser skilled White employees Gerry's supervisor did not provide Gerry with any valid reason.

57. Further, when Gerry was hired, General Dynamics promised Gerry a significantly higher hourly wage rate than Gerry has been paid.

58. Despite Gerry's inquiries, management has not provided any explanation why he has not received the higher wage rate that he was promised.

59.    Gerry has been harmed by being reassigned to a different job outside of his welding position and not being given the wage rate he had been promised.

60.    He has been replaced by two White employees because Gerry is Black.

61.    Management's racially motivated actions have caused Gerry to suffer extreme distress.

62.    Upon information and belief, no White, Hispanic, or Asian employee in the plant has been subjected to racial discrimination or replaced by less experienced White employees.

**COREY POLITE**

63.    Corey Polite ("Corey") began working for General Dynamics on April 15, 2024.

64.    His job classification is Labor Grade 3- Production.

65.    Corey has many years of experience painting product in manufacturing paint shop operations.

66.    Management assigned him to work in the paint shop operation.

67.    He is the most skilled, trained, and experienced paint shop employee in the plant.

68.    In July 2024, management posted an opening for a new Paint Shop Lead Person position that paid more than Corey's Labor Grade 3 position.

69.    He was interviewed by management and answered all the questions asked of him.

70.    His supervisor is named Jason Yeager ("Yeager"). Yeager is White.

71.    Yeager advised Corey that Yeager selected Corey for the position.

72.    The position was considered a promotion.

73.    Another supervisor named Parker O'Keefe (Black) confirmed to Corey that he was selected for the promotion.

74.    The promotion would result in an hourly increase of $3.40.

75.    Shortly after being advised, he had been awarded the promotion, Corey went on bereavement leave.

76.    Upon Corey's return to work from his approved bereavement leave, his White supervisor Yeager advised Corey that management had changed their minds, and Corey would not be promoted.

77.    Corey asked Yeager  why management changed their minds.

78.    Yeager replied that the paint shop had not been properly cleaned.

79.    Corey responded that Corey had not even been in the paint shop because Corey was out of the plant due to his approved bereavement leave of absence, so Corey was not responsible for the paint shop's condition.

80. When Corey advised Supervisor O'Keefe that Corey's promotion had been revoked, O'Keefe was shocked.

81. O'Keefe told Corey that O'Keefe had personally seen the paperwork confirming that Corey was selected for the promotion to Paint Shop Lead Person.

82. Instead of Corey, the promotion to the Paint Shop Lead Person position was awarded to a Hispanic employee with less painting experience, skill, knowledge and training.

83. The Hispanic employee admitted to Corey that he knew nothing about painting. Then the Hispanic employee asked Corey if Corey would train him on paint shop operations.

84. Corey readily agreed to train the Hispanic employee on paint shop skills and operations.

85. However, when senior plant management became aware that Corey was training the Hispanic employee, they removed Corey from training the Hispanic employee and assigned another employee to train the inexperienced new Hispanic Paint Shop Lead Person.

86. It is Corey's understanding that to be eligible for a promotion to a Lead Person position the successful candidate must possess at least a Labor Grade 3 production classification, which Corey possessed.

87.     Yet, the Hispanic employee who replaced Corey only possessed a lower Labor Grade 2 production classification, which would make the Hispanic employee ineligible to fill the Lead Person Paint Shop opening.

88.     The facts establish management discriminated against Corey because he is Black when management promoted the Hispanic employee lacking the prerequisite Labor Grade 3 position, rather than Corey.

89.     Yeager promised Corey that Corey would receive the next promotion to the Lead Person Paint Shop position when there was a future opening. Yeager told Corey that Corey "Would be next in line."

90.     A second Lead Person Paint Shop opening became available.

91.     Corey was not promoted to the new open position.

92.     Yet, another Hispanic employee was promoted to the Paint Shop Lead Person position.

93.     Again, for a second time, Corey was denied the promotion because he is Black.

94.     Management continues to discriminate against Corey and other Black employees by secretly promoting non-Black employees to promotional opportunities without notifying Black employees of new promotional opportunities.

95.    Corey has been denied third and fourth promotional opportunities when two new Lead Person openings became available.

96.    Hispanic employees were awarded these third and fourth openings.

97.    Corey has been repeatedly harmed by management's discriminatory conduct directed against him.

98.    Corey has lost several opportunities to earn significant pay increases and promotions to higher classifications that carry greater status within the plant.

99.    As a result, Corey has suffered extreme emotional distress due to management's discriminatory practices.

100.    Despite Corey's White supervisor continuing to assure Corey he would be promoted to the next available Lead Person position, management continued to promote Hispanic employees into such openings instead of Corey.

101.    Upon information and belief, no White, Hispanic, or Asian employee in the plant has been discriminated against by being repeatedly denied a promotion after receiving a direct assurance from a supervisor that they would be the next Lead Person selected when an opening became available.

**MCKINLEI POLITE**

102.    McKinlei was hired by General Dynamics on April 29, 2024, as a Production Operator II.

103.   McKinlei has both an associate's degree and a bachelor's degree.

104.   McKinlei has an aspiration to work in Human Resources.

105.   An entry-level Human Resources position became available at the plant.

106.   McKinlei applied for the opening, which would provide a pay increase and a new opportunity for growth and advancement.

107.   McKinlei was rejected, without any explanation from management.

108.   Also, McKinlei applied for other openings, but McKinlei was denied those open positions despite her qualifications.

109.   McKinlei was denied all openings for which she applied, despite her qualifications.

110.   Non-Black employees were awarded the openings for which McKinlei had applied.

111.   McKinlei was denied openings because she is Black.

112.   Management's repeated denying  McKinlei open opportunities while non-Blacks were awarded such opportunities has caused McKinlei to suffer severe emotional distress due to management's racial discrimination against her.

113.   McKinlei's direct supervisor Jason, who is White, made an anti-Black statement. After he was informed that McKinlei's co-worker Kaden, who is a light-

skinned Black person, was half-Black, Jason stated, "I didn't think you had that in you."

114.    Jason provided no explanation for his anti-Black remark.

115.    Jason's anti-Black statement demonstrates anti-Black remarks that perpetuate racial bias, and discriminatory attitudes are tolerated by management.

116.    McKinlei's Team Lead Ashlee (White female) advised her that Ashlee's  former Day Shift Team Lead Brad Pierce (White male) made racist statements.

117.    Also, Brad denigrated another Black female coworker (named Yeurie) and McKinlei behind their backs.

118.    Brad also discriminated against Ashlee when he asked her why she was entering the Lab, because she is "a girl" and that she "should not be there."

119.    Ashlee told McKinlei's manager Jeremiah (White male) that she does not feel comfortable working with Brad because of his racist and sexist behavior.

120.    Jeremiah never followed up with Ashlee.

121.    Brad's racist and sexist behavior created an uncomfortable work environment for Ashlee, Yeurie, and McKinlei.

122.    Both Jerremiah and Brad were both talking about women in a distasteful manner, including sexist comments about their wives. They then harassed Ashlee by

asking her why she stopped speaking with them anymore. She responded that she will not be joining their conversations that were degrading to women.

123. Brad's racist and sexist conduct made Yeurie, Ashlee, and McKinlei feel they will not be given an equal opportunity to learn and be promoted even though all three of them are next in line to be promoted into the NDT operation.

**GARY ROUNDTREE**

124. Gary Roundtree ("Gary") began working for General Dynamics on May 13, 2024.

125. His position was Production Lead.

126. His supervisor was Bo Jones.

127. On October 23, 2024, Gary emailed management representatives Joan Latham ("Latham") and Julie Parsons ("Parsons") notifying them of the blatant racial discriminatory conduct engaged in by   management staff members at the Mesquite, Texas manufacturing plant.

128. Gary advised them he was suffering from Post Traumatic Distress Syndrome caused by the racial discrimination and retaliation inflicted upon him and other Black employees.

129. Gary received no response from them, nor any other management official.

*Original Complaint*                                                                 *Page 16*

130.   In his email to them, he requested they forward his concerns to General Dynamics Chief Executive Officer Phoebe Novakovic ("Novakovic").

131.   In his email to them, Gary explicitly stated that he was personally discriminated against by management because he is Black. Also, Gary told them that General Dynamics management staff regularly discriminates against Black employees to intimidate them.

132.   He advised them management treats Black employees as if they are enslaved laborers, fostering an "overseer" mentality.

133.   He notified them that management displays an overseer mentality towards Black employees designed to intimidate Black employees.

134.   He explained to them that management's racist conduct has attempted to make Black employees feel worthless.

135.   Gary told Latham management attempts to make Black employees feel worthless and deliberately creates intolerable working conditions.

136.   Management has banned Black employees from entering the air-conditioned front office where management works, while employees of other races are not subjected to these restrictions.

137. Gary told them management has sought to stifle Black employees from voicing any complaints about the racial discrimination management exhibited against Black employees.

138. Management actively suppresses complaints from Black employees regarding unfair conditions by creating an environment of fear and retaliation.

139. Gary explained that management has exhibited its racial animus towards Black employees by refusing to provide basic human necessities at work. Management has refused to regularly supply toilet paper and hand soap in employee restrooms.

140. With the exception of the plant office area where management and administrative employees sit, the plant is not air-conditioned.

141. Management has deliberately refused to provide electric fans on the shop floor to help relieve employees from the excessive heat caused by the 100 + degree temperature outside the plant. This racial management neglect is well-documented.

142. Management's pattern of racist conduct demonstrates management's belief that they can continue to racially discriminate against, and retaliate against, Black employees with impunity, without fear of any consequences from corporate leadership.

143.    Gary was unlawfully retaliated against by management after he complained to management that Black employees were repeatedly subjected to substandard working conditions.

144.    Management's repeated racist conduct against Black employees establishes plant management representatives' belief that they may continue to racially discriminate and retaliate against Black employees with impunity, without fear of any negative repercussions from their upper-level corporate management superiors.

145.    Management's racist conduct against Black employees is well-documented in Plaintiffs' notes.

146.    In Gary's email to Latham, Gary included all these acts of racial discrimination and retaliation.

147.    However, neither Latham nor any other corporate management representative has responded to Gary's email.

148.    Despite multiple efforts to bring numerous racial issues to management's attention, Gary has received absolutely no response from anyone in leadership.

149. Further, due to management's racial discriminatory treatment against Black employees, White, Hispanic, and Asian employees are paid more than Black employees.

150. As a direct result of the racial discrimination and retaliation against him and other Black employees, Gary was forced to resign on September 8, 2024.

151. Gary has lost his income and benefits.

152. Gary continues to suffer severe emotional distress due to the treatment he endured.

**KENNIE BROWN**

153. General Dynamics hired Kennie for a welder position on September 8, 2024.

154. Brown is an expert welder.

155. Brown has decades of welding experience.

156. The reason Brown accepted employment with General Dynamics was his desire to work as a welder in the General Dynamics welding department.

157. In September 2024 Brown was moved from his position as a welder.

158. Management hired a 19-year-old White male to replace Brown.

159. The White employee had much less welding experience than Brown.

160.    Management then hired a second 19-year-old White male into the welding department to replace Brown.  He has much less welding experience than Brown.

161.    The reason Brown was replaced by two White new hires is because he is Black.

162.    Brown was then transferred to the forging department.

163.    Then Brown was moved  a second time to the phosphate department.

164.    Management had a non-supervisory employee transfer Brown.

165.    Brown was replaced and moved because he is Black.

166.    As a result of the racial discrimination inflicted upon Brown, his reputation in the plant has been severely damaged due to  management's replacing Brown with two very inexperienced 19-year-old new hires, and then repeatedly moving Brown  from one department to another, thus creating the false impression that Brown is  an unreliable employee incapable of maintaining a job in his  lifelong profession as a welder.

167.    As a result, Brown has suffered severe emotional distress because of the racial discrimination inflicted upon him by management.

168.    Brown has not been given a legitimate reason why he was moved repeatedly and replaced by two inexperienced 19-year-old White employees.

169. To Brown's knowledge, no White, Hispanic, nor Asian employee has been subjected to the same mistreatment that Brown has been subject to because of his race.

170. General Dynamics favors employees who are not African American in hiring, promotions, transfers, compensation, and work environment.

171. General Dynamics hires and promotes non-African American persons who are less qualified than African Americans seeking or available for the same position.

172. General Dynamics pays non-African American persons more than similarly situated African Americans.

173. General Dynamics does not strive to create an environment in which employees feel free to raise concerns and are confident that those concerns will be addressed.

174. General Dynamics promotes and tolerates retaliation in the workplace.

175. General Dynamics knows that its employees fear retaliation in the workplace for opposing or reporting workplace violations.

176. Although foreseeable, General Dynamics fails to prevent discrimination against Plaintiffs.

177. Although foreseeable, General Dynamics failed to prevent retaliation against Gary Roundtree when he reported discrimination.

178. General Dynamics relies on the fear of retaliation to cover up or promote discrimination and fear of retaliation.

179. General Dynamics refuses to conduct a reasonable investigation to substantiate the illegal conduct.

180. General Dynamics relies on sham investigations to cover up and promote discrimination and fear of retaliation.

181. General Dynamics seeks to find information that does not substantiate Plaintiffs' claims and ignores information that substantiates Plaintiffs' claims.

182. General Dynamics views all of the facts in an investigation in its favor rather than in a reasonably objective manner.

183. General Dynamics does not act in good faith in preventing discrimination or retaliation.

184. General Dynamics chooses not to adequately train managers on the signs to recognize discrimination.

185. General Dynamics chooses not to adequately train managers on the signs to recognize retaliation.

186. General Dynamics fails to monitor the workplace for signs, symptoms, and red flags of discrimination to determine if managers and employees are preventing discrimination.

187. General Dynamics fails to monitor the workplace for signs, symptoms, and red flags of retaliation to determine if managers and employees are preventing retaliation.

188. General Dynamics managers recognize discrimination if someone makes racist comments, although they tolerate it, but managers are not adequately trained to look for signs, symptoms, and red flags of discrimination absent racial comments.

189. General Dynamics chooses not to adequately train managers that employees or agents who discriminate are not going to admit to discriminating against employees or agents.

190. General Dynamics chose not to adequately train managers that retaliators are not going to admit to retaliating against employees.

191. General Dynamics chose not to adequately train managers that people are afraid to report discrimination and retaliation because the discrimination and retaliation will only get worse.

192. General Dynamics covers up discrimination and retaliation by conducting sham investigations.

193. General Dynamics does not choose people to investigate reports of discrimination and retaliation who are neutral.

194. General Dynamics chooses people to investigate complaints of discrimination whose job is to defend General Dynamics against claims of discrimination.

195. When General Dynamics employees report discrimination, the investigators cover up the discrimination by refusing to examine the evidence in an objective manner, refusing to interview all important witnesses, refusing to consider all important documents, and gaslighting the persons reporting the discrimination and retaliation.

**Discriminatory and Retaliatory Treatment of Plaintiffs**

196. General Dynamics treated Plaintiffs differently from similarly situated persons who are not Black.

197. The Plaintiffs have been subjected to adverse actions.

198. The Plaintiffs can corroborate discriminatory facts of each other.

199. Plaintiffs are persons of integrity, courage, and perseverance.

200. Plaintiffs are level-headed and good workers.

201.   Plaintiffs are not complainers just to be complainers.

202.   Plaintiffs repeatedly reported bad treatment, and nothing changed.

203.   General Dynamics did not investigate each report of discrimination.

204.   General Dynamics, when it investigates, does not interview all important witnesses.

205.   To Plaintiffs' knowledge, General Dynamics has never substantiated discrimination or retaliation after a complaint has been made.

206.   No matter what it finds, General Dynamics always claims it is not discrimination or retaliation.

207.   General Dynamics as a large company must have systems to prevent discrimination and retaliation.

208.   General Dynamics must supervise and monitor to prevent discrimination and retaliation.

209.   HR must not just always side with General Dynamics.

210.   Good, hard-working employees should be treated fairly.

211.   General Dynamics must communicate the results of an investigation to the person reporting the problem.

212.   General Dynamics must follow its own policies.

213. The Plaintiffs do not have to prove their case out of their own mouths alone.

214. General Dynamics must treat reports of discrimination or retaliation seriously.

215. General Dynamics must not assume that discrimination or retaliation is just in someone's head and not real.

216. Other witnesses back up Plaintiff's reports of discrimination and retaliation.

217. Many employees at the facility are being placed in other positions as the facility at which the Plaintiffs' work is being shut down.

218. General Dynamics has surveillance cameras at its facilities.

219. General Dynamics does not allow employees to take pictures at the facility at which the Plaintiffs work.

220. Corporations must protect employees from unlawful termination.

221. Corporations must prevent unlawful conduct even if managers think it's too hard.

222. Corporations must prevent unlawful conduct even if it will make managers and other employees upset.

223. HR and managers must be trained how to recognize discrimination and retaliation.

224. HR and managers must be trained to look for signs, symptoms, and red flags of discrimination.

225. HR and managers must be trained to look for racial comments.

226. HR and managers must be trained to look for different treatment in pay.

227. HR and managers must be trained to look for different treatment in promotions and transfers.

228. HR and managers must be trained to look for different treatment in hiring.

229. HR and managers must be trained to look for different treatment in discipline.

230. HR and managers must be trained to look for different treatment in attitude.

231. HR and managers must be trained to look for signs of a toxic work environment.

232. HR and managers must be trained to stop a supervisor or co-worker from treating a person differently because of race.

233.   HR and managers must be trained to stop a supervisor or co-worker from retaliating.

234.   General Dynamics is responsible for the proper training of HR and managers.

235.   General Dynamics must honestly and accurately report discrimination to the government.

236.   General Dynamics is responsible for supervising HR and managers.

237.   It is never okay to discriminate based on race.

238.   It is never okay to retaliate against someone making a good faith report of discrimination.

239.   Plaintiffs did not violate any policy at General Dynamics.

240.   General Dynamics does not have any documented complaints against Plaintiffs.

241.   General Dynamics must follow its own policies.

242.   General Dynamics must not ignore red flags of discrimination and retaliation.

243.   When the Plaintiffs reported the discrimination and retaliation to General Dynamics, General Dynamics either ignored them or conducted sham investigations initially by HR and supervisors.

244. General Dynamics refuses to treat Plaintiffs on an equal basis as non-Black employees.

245. General Dynamics' harassment is such that enduring offensive conduct becomes a condition of continued employment.

246. General Dynamics' conduct toward the Plaintiffs is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, offensive, or abusive.

247. General Dynamics' conduct is not just petty slights, annoyances, or isolated incidents, except for possibly a few extremely serious actions.

248. General Dynamics repeatedly and consistently treated and continues to treat the Plaintiffs as less than in the conduct described in detail in this complaint.

249. General Dynamics knows that race discrimination must be viewed in context of history of the treatment of African Americans in the United States in which they were enslaved.

250. General Dynamics managers, HR personnel, and investigators ignore the signs of discrimination and retaliation and do not respond to prevent the discrimination and retaliation.

**Policies Do Not Enforce Themselves**

251. General Dynamics has written polices created for the purpose of following laws against discrimination and retaliation.

252. General Dynamics knows that the written polices do not enforce themselves.

253. General Dynamics' policies promised to protect Plaintiffs from discrimination and retaliation.

254. General Dynamics violated its own policies by discriminating and retaliating against Plaintiffs.

255. General Dynamics breached its promise to protect Plaintiffs from discrimination and retaliation.

256. While this complaint provides sufficient detail to give notice of plausible claims of discrimination and retaliation, it does not contain all of the facts that may be presented at trial.

257. The factfinder must make the choice and decide whether:

    a.    the Plaintiffs are telling the truth;

    b.    the Plaintiffs are just basing their claims on beliefs, feelings, or thoughts;

    c.    the Plaintiffs are merely speculating;

    d.    General Dynamics is telling the truth;

e.    General Dynamics is acting in good faith;

f.    General Dynamics has witnesses to support its defense;

g.    General Dynamics has documents to support its defense;

h.    the Plaintiffs are believable;

i.    the Plaintiffs have other witnesses to support their claims;

j.    the Plaintiffs have documents to support their claims;

k.    General Dynamics is not telling the truth;

l.    General Dynamics knows that it discriminates and retaliates; or

m.    General Dynamics is covering up the discrimination and retaliation.

**Violation of the Civil Rights Act of 1866**

258.    Plaintiffs' claims for recovery under the Civil Rights Act of 1866 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

259.    This law entitles a person of color to equal opportunity and treatment in employment or other contractual relationships.

260.   The Civil Rights Act of 1866 is a centerpiece legislation in our country, founded upon the self-evident truth that all of us are created equal and endowed by their maker with certain inalienable rights, among them life, liberty, and the pursuit of happiness.

261.   Making a living is foundational to the pursuit of happiness in America.

262.   As recognized in our civil war over this principle, our country is dedicated to the proposition that all of us are created equal.

263.   The Civil Rights Act of 1866 was passed to give effect to the Thirteenth Amendment.

264.   The Civil Rights Act of 1866 became the blueprint for the Fourteenth Amendment.

265.   In our time, Martin Luther King, Jr., dreamed that one day our country would rise up and live out the meaning of its creed, that all of us are created equal.

266.   The Civil Rights Act of 1866 is the shining star that reflects the ideal of our country at its core.

267.   Our creed is not just embodied in a declaration, a speech, or a sermon, but in law and commerce where it matters, through the Civil Rights Act of 1866 by those with the courage to enforce it.

268. The statue is enforced by those who are not afraid to upset the status quo, to stop the perpetual system of discrimination and retaliation, of unfairness and injustice.

269. Under the Civil Rights Act of 1866, when an employer or contractor acts adversely against a person of color because of that person's race, the law has been violated, and the person of color may file a suit and recover damages.

270. A person is also entitled to file suit and recover damages under the Civil Rights Act of 1866 for retaliation for opposing or reporting violations of the Civil Rights Act of 1866, or for participating in an investigation of a violation of the Civil Rights Act of 1866.

271. Employees or agents of General Dynamics participated in the harassment of the Plaintiffs.

272. General Dynamics knew or should have known of the harassment and failed to take prompt, remedial action to eliminate the harassment.

273. General Dynamics has a pattern and practice of discriminating based on race and retaliating against those who oppose or report discrimination.

274. Plaintiffs opposed General Dynamics denying persons the "right to make" contracts and denying the same "security of persons and property as is

enjoyed by white citizens" in the United States as required by federal law. *See* 42 U.S.C. § 1981.

275.    General Dynamics violated the federal statute by intentionally discriminating against Plaintiffs and retaliating against Plaintiffs and, as a direct result, caused damages to Plaintiffs.

276.    The liability can be either actual or constructive under the *McDonnell Douglas* framework.

277.    General Dynamics knew or should have known that its White employees were discriminating against African Americans and as a result should have taken corrective action to prevent the discrimination within its control.

**Compensatory and Equitable Relief**

278.    Plaintiffs sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which they are entitled to recovery under their causes of action.

279.    Plaintiffs are also entitled to declaratory relief that violations have occurred.

280.    Plaintiffs are also entitled to equitable relief in the form of reinstatement and an injunction against future discrimination or retaliation.

**Attorneys' Fees**

281.   Plaintiffs are also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

282.   Plaintiffs are also entitled to receive punitive damages because General Dynamics engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## JURY DEMAND

283.   Plaintiffs request a trial by jury to the extent allowed by law.

WHEREFORE, Plaintiffs request that Defendant General Dynamics answer and that on final trial, Plaintiffs have judgment against Defendants for compensatory, declaratory and equitable relief, and exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which they may be entitled.

Respectfully submitted,


/s/ Brian P. Sanford
   Brian P. Sanford
   Texas Bar No. 17630700
   bsanford@sanfordfirm.com
   Elizabeth "BB" Sanford
   Texas Bar No. 24100618
   esanford@sanfordfirm.com
   Chris Antone
   Texas Bar No. 790186
   cantone@sanfordfirm.com

**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**


## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2025, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.


/s/ Brian P. Sanford


*Original Complaint*                                    ***Page 37***