IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY POLITE, MCKINLEI POLITE, GARY ROUNDTREE, GERRY LEWIS, and KENNIE BROWN, | §<br>§<br>§<br>§ | |
| *Plaintiffs,* | §<br>§ | Civil Action 3:25-cv-2163-B |
| vs. | §<br>§ | **JURY DEMANDED** |
| GENERAL DYNAMICS ORDNANCE AND TACTICAL SYSTEMS, INC., | §<br>§<br>§<br>§ | |
| *Defendant.* | §<br>§ | |

**PLAINTIFFS' BRIEF
SUPPORTING RESPONSE TO DEFENDANT'S
<u>MOTIONS TO DISMISS AND ALTERNATIVELY TO SEVER</u>**

Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com
Chris Antone
Texas Bar No. 790186
cantone@sanfordfirm.com

**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

## Table of Contents

Table of Authorities.................................................................................................ii

Procedural History...................................................................................................2

Legal Standard ........................................................................................................3

Gerry Lewis .............................................................................................................6

    Discrimination ...................................................................................................6

    Retaliation ..........................................................................................................8

    Constructive Discharge .....................................................................................9

Corey Polite ...........................................................................................................10

    Discrimination..................................................................................................10

    Retaliation ........................................................................................................15

    Constructive Discharge....................................................................................15

McKinlei Polite.......................................................................................................16

    Discrimination..................................................................................................16

    Retaliation ........................................................................................................18

Gary Roundtree .....................................................................................................19

    Discrimination..................................................................................................19

    Retaliation ........................................................................................................20

    Constructive Discharge....................................................................................20

Kennie Brown.........................................................................................................21

    Discrimination..................................................................................................21

    Retaliation ........................................................................................................22

Response to Motion to Sever.................................................................................22

Response to Request for Attorney's Fees ..............................................................25

## Table of Authorities

**Page(s)**

**Cases**

*Alaniz v. Zamora-Quezada*,
  591 F.3d 761 (2009) ................................................................24

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ...................................................8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................3, 4, 5, 11

*Berry v. Texas Woman's Univ.*,
  528 F. Supp. 3d 579 (E.D. Tex. 2021) ...............................14, 17

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006)....................................................... 9, 15, 19

*Bye v. MGM Resorts Int'l, Inc.*,
  49 F.4th 918 (5th Cir. 2022) ...............................................10, 21

*Cicalese v. Univ. of Tex. Med. Branch*,
  924 F.3d (5th Cir. 2019) ......................................................5, 11

*Guedry v. Marino*,
  164 F.R.D. 181 (E.D. La. 1995) ...........................................23

*Hamilton v. Dallas Cnty.*,
  79 F.4th 494 (5th Cir. 2023) ............................................... 8, 10

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) ................................................4

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
  892 F.3d 719 (5th Cir. 2018) ............................................3, 7, 19

*Int'l Bhd. of Teamsters v. United States*,
 431 U.S. 324 (1977) ............................................................................................ 15

*Jenkins v. City of Dallas*,
 No. 3:22-CV-0960-B, 2022 WL 6225559 (N.D. Tex. Oct. 6, 2022) ................................ 3

*Jenkins v. City of Dallas, Tex.*,
 717 F. Supp. 3d 528 (N.D. Tex. 2024) ........................................................... 5, 8

*Lormand v. US Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009) ............................................................................ 4

*Lusk v. Pennzoil United, Inc.*,
 56 F.R.D. 645 (1972) ...................................................................................... 22

*McKinney v. Wulfeck*,
 No. 421CV00205JFHJFJ, 2023 WL 2947546 ................................................... 22

*Moorhouse v. Boeing Co.*,
 501 F. Supp. 390 (E.D. Pa. 1980) .................................................................... 23

*Muldrow v. City of St. Louis, Missouri*,
 601 U.S. 346 (2024) .............................................................................. 8, 10, 11

*Myers v. City of West Monroe*,
 211 F.3d 289 (5th Cir. 2000) .......................................................................... 25

*Organic Chemicals, Inc. v. Carroll Products, Inc.*,
 86 F.R.D. 468 (W.D.Mich.1980) .................................................................... 22

*Reid v. General Motors Corp.*,
 240 F.R.D. 260 (2007) ................................................................................... 23

*Smith v. Kendall*,
 No. 23-50713, 2024 WL 4442040 (5th Cir. Oct. 8, 2024) ................................... 8

*Swierkiewicz v. Sorema*,
 34 U.S. 506 (2002) ................................................................................. 4, 5, 7

iii

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014)...................................................................................................5

**Statutes**

42 U.S.C. § 1981 ...................................................................................................................3

**Rules**

Fed. R. Civ. P. 8(b)(1)(B) ....................................................................................................2

Fed. R. Civ. P. 15(a)(2) ........................................................................................................3

Fed. R. Civ. P. 42(b) .....................................................................................................22, 24

Rule 8(a) ...............................................................................................................................4

**Other Authorities**

5 Wright & Miller, Fed. Prac. & Proc. § 1216, 235–36 (3d ed. 2004)..................................4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY POLITE, MCKINLEI POLITE, GARY ROUNDTREE, GERRY LEWIS, and KENNIE BROWN, | § § § § | |
| *Plaintiffs,* | § § | Civil Action 3:25-cv-2163-B |
| vs. | § § § | **JURY DEMANDED** |
| GENERAL DYNAMICS ORDNANCE AND TACTICAL SYSTEMS, INC., | § § § § | |
| *Defendant.* | § § | |

**PLAINTIFFS' BRIEF
SUPPORTING RESPONSE TO DEFENDANT'S
MOTIONS TO DISMISS AND ALTERNATIVELY TO SEVER**

TO THE HONORABLE JANE J. BOYLE:

Plaintiffs Corey Polite, McKinlei Polite, Gary Roundtree, Gerry Lewis, and Kennie

Brown submit their brief in support of their response to Defendant General Dynamics

Ordnance and Tactical Systems, Inc.'s motion to dismiss and, alternatively, to sever and

for fees.

The motion to dismiss should be denied because Plaintiffs have alleged fact that

plausibly support their causes of actions, including facts supporting a prima facie case,

which is more than required for discrimination or retaliation cases at the pleading stage.

- 1 -

The motion to sever should be denied because trying the cases together saves Court resources, as well as that of a jury or juries. Fees are not warranted because the claims are not frivolous, unreasonable, or groundless.

### **Procedural History**

Plaintiffs filed their original complaint against General Dynamics Corporation and attempted to serve this defendant. (Doc. 1, Compl.; Doc 5, Summ.).[1] After further investigation, Plaintiffs agreed with General Dynamics Corporation to filed an amended complaint substituting Defendant General Dynamics Ordnance and Tactical Systems, Inc. for General Dynamics Corporation. After the Court granted leave, Plaintiffs filed a First Amended Complaint correcting the defendant party. (Doc. 18, First Amend Compl.). General Dynamics Ordnance and Tactical Systems, Inc. ("General Dynamics") then filed a motion to dismiss the First Amended Complaint. (Doc. 26, Mtn to Dism.).

As part of Plaintiffs' response to the initial motion to dismiss, Plaintiffs sought leave to file a second amended complaint addressing the concerns raised by General Dynamics. (Doc. 31, Resp. to Dism.). Without addressing the particulars of the motion to dismiss, the Court granted leave to Plaintiffs unopposed motion to file their Second Amended Complaint. (Doc. 33, Elec. Or.). After Plaintiffs filed their Second Amended Complaint

---

[1] To make Defendant's task in answering a complaint easier, Plaintiffs designate each sentence as a paragraph. Separate paragraph designations for each sentence makes it easier for a defendant to admit or deny an allegation as required by FED. R. CIV. P. 8(b)(1)(B), rather than responding to combined sentences that may make an answer more complicated or difficult.

(Doc. 34, Sec. Amend Compl.), General Dynamics filed another motion to dismiss, as well as an alternative motion to sever and for fees. (Doc. 35, Sec. Mtn to Dism. and Altern. Mtn to Sev.). Plaintiffs are now responding to General Dynamics' second motion to dismiss and first motion to sever and for fees. The Court will be addressing the actual arguments of a motion to dismiss by General Dynamics for the first time.

To the extent the Court finds deficiencies in the Second Amended Complaint, Plaintiffs request another chance to amend their pleadings in light of the deficiencies noted by the Court. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *see also Jenkins v. City of Dallas*, No. 3:22-CV-0960-B, 2022 WL 6225559, at *11 (N.D. Tex. Oct. 6, 2022).

## <u>Legal Standard</u>

Plaintiffs' claims are for recovery under the Civil Rights Act of 1866, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. 42 U.S.C. § 1981. This law entitles a person of color to equal opportunity and treatment in employment or other contractual relationships.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.,* 892 F.3d 719, 726 (5th Cir. 2018) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (cleaned up).

Discrimination cases need only satisfy the simplified pleading requirements of Rule 8(a). *See Swierkiewicz v. Sorema,* 34 U.S. 506, 513 (2002). The greater particularity requirements of Rule 9(b) apply to other cases such as those involving fraud or mistake. *Id.* at 707. Once a claim for relief has been stated, a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 563 (2007). A plaintiff need not allege additional facts needed at the trial stage to support a discrimination claim. *Swierkiewicz,* 34 U.S. at 514. A heightened pleading requirement of "specific facts" beyond those necessary to state a discrimination claim and the grounds showing entitlement to relief is improper. *Id.*, at 508. A complaint "does not need detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citing* 5 Wright & Miller, FED. PRAC. & PROC. § 1216, 235–36 (3d ed. 2004)). Although the plausibility requirement

- 4 -

requires more than sheer possibility, it does not impose a probability requirement. *Id.* at 556.

While a court may consider *McDonnell Douglas* to frame the motion to dismiss inquiry, it may not inappropriately heighten the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss. *Jenkins v. City of Dallas, Tex.,* 717 F. Supp. 3d 528, 536 (N.D. Tex. 2024) (citing *Cicalese*, 924 F.3d at 767 (5th Cir. 2019)); *see also Swierkiewicz*, 34 U.S. at 511 (A plaintiff alleging a discrimination case need not identify the prima facie case in his or her pleadings and the Supreme Court has rejected the argument that a discrimination complaint requires greater "particularity," because this would too narrowly constrict the role of the pleadings.). The Fifth Circuit recognizes that the Supreme Court has distinguished the *McDonnell Douglas* evidentiary standard from pleading requirements. *See Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766-67 (5th Cir. 2019) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-12 (2002)). A district court therefore errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage. *Id.* Fact-intensive inquiries are better suited to summary judgment. *See Thompson v. City of Waco*, 764 F.3d 500, 506 (5th Cir. 2014).

## Gerry Lewis

## Discrimination

### Access to Heating and Air-Conditioning

Mr. Lewis alleges that General Dynamics permitted non-Black employees to stay longer in the air-conditioned break room than non-Black employees. ¶55.[2] Co-workers fell silent when Black employees entered the break room, treating them with open hostility. ¶60.

Mr. Lewis also alleges that General Dynamics restricted Black workers from the air-conditioned office, but not non-Black workers. ¶56. The break room and office were the only areas in General Dynamic's plant with air conditioning and heating. ¶57. These restrictions affected Mr. Lewis's ability to do his; when Mr. Lewis attempted to read his required work manual in the break room, General Dynamics ordered him out of the room to study in the outside heat. ¶58. These allegations show plausible disparate adverse treatment based on race.

### Demotion

Mr. Lewis was the most skilled and most experienced welder at General Dynamics' plant. ¶67-68. However, General Dynamics demoted him from a Welder II position to a machinist (¶72, 95) and replaced his Welder position with two White employees who were only about eighteen years old. ¶71. General Dynamics refused to give Mr. Lewis a reason

---

[2] Designations to paragraphs in the Second Amended Complaint (Doc. 34, Sec. Amend Compl.) are noted as ¶#.

- 6 -

for the demotion or replacement by lesser experienced White employees. ¶75. These allegations show disparate adverse treatment based on race.

Although not required, the allegations constitute a prima facie case of discriminatory demotion and further, General Dynamics does not carry its burden of production of a legitimate non-discriminatory reason. This pleads the whole *McDonnell Douglas* framework; far more than the basic pleading requirement. *See Swierkiewicz*, 34 U.S. at 511. Mr. Lewis meets the plausibility requirement for alleging the demotion.

**Pay Disparity**

Mr. Lewis also alleged, upon information and belief, that General Dynamics paid him less than non-Black employees in the Welder II position. ¶¶80-82. This belief is based on General Dynamics' refusal to provide Mr. Lewis with the compensation he was promised for the Welder II position, creating a reasonable inference that other (non-Black) Welder IIs were paid the amount in full. ¶81. The information as to payment of all employees at the plant is in the control of General Dynamics. Mr. Lewis may plead "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant ... or where the belief is based on factual information that makes the inference of culpability plausible." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) (internal quotation marks omitted).

Mr. Lewis does not need to name the decision-maker at the pleadings stage. If the prima case is not required, then *a fortiori*, identifying a decision maker is not necessary. *Cf. Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *8 (5th Cir. Oct. 8, 2024) (identifying a decision-maker at the pleading stage for retaliation is not required). Furthermore, identifying a comparator, while not necessary, is sufficient evidence to survive a 12(b)(6) motion. *See Jenkins v. City of Dallas, Texas,* 717 F. Supp. 3d 528, 537 (N.D. Tex. 2024). At this stage, no further evidence is necessary to support an inference of discrimination and Mr. Lewis has alleged a plausible adverse action based on race.

**Hostility**

Mr. Lewis's allegations of hostility by non-Black workers against Black workers, disparate treatment in access to heating and air-conditioning and pay, and then demotion, each individually and together rise to the level of harm necessary under *Muldrow* and *Hamilton. See Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346, 355 (2024); *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023).

**Retaliation**

Mr. Lewis complained to his manager, Jason Yeager, who is White, that he had been replaced by younger White employees with less experience. ¶76. Mr. Yeager said he would report the issue to HR, but HR never reached out to Mr. Lewis. ¶¶77-78. General Dynamics apparently did not conduct an investigation of Mr. Lewis's report of

discrimination. ¶79. Mr. Lewis complained that General Dynamics paid him less because of his race to Mr. Yeager. ¶80.

Mr. Yeager said a second time that he would talk to HR to resolve the issue. ¶83. Again, HR did not contact him and the issue was not resolved and Genera; Dynamics apparently did not investigate. ¶¶84-85. After Mr. Lewis complained to Mr. Yeager, Mr. Yeager started to avoid him and ignored his concerns about race discrimination. ¶¶86-87. A reasonable employee would have found the continued discrimination with the failure to correct, ignoring his complaints, and failure to investigate materially adverse. General Dynamic's actions well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Mr. Lewis has alleged facts sufficient for a retaliation claim. To the extent more facts are necessary, he can provide additional facts in an amended complaint.

**Constructive Discharge**

Mr. Lewis alleges sufficient facts for a constructive discharge claim. General Dynamics demoted him, a person with over 45 years of welding experience who had graduated from welding school (¶ 70) and replace him with two White employees who were about eighteen years old. ¶ 71. The reduction to Machinist responsibilities was less prestigious than welding. ¶ 71. Demotion and reduction of responsibilities are two of the main factors considered for constructive discharge claims. *See Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 924 (5th Cir. 2022).

General Dynamics also reassigned Mr. Lewis to degrading work compared to his talent as a welder. Adding to this the lower pay, disparate access to heating and air-conditioning, hostility, and retaliation, the allegations together provide facts making a constructive discharge plausible.

**Corey Polite**

**Discrimination**

### Safety Team

Mr. Polite had training in safety and first responder experience. ¶ 109. He requested that General Dynamics place him on its safety team. ¶ 110. General Dynamics refused and instead placed less experienced non-Black employees on the safety team. ¶ 111. A promotion, formerly listed as an ultimate employment decision, is no longer required as harm arising to the level of a cognizable adverse action. *See*

*Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (harm need not be significant, serious, or substantial). *See also Hamilton v. Dallas Cnty.*, 79 F.4th 494, 506 (5th Cir. 2023) (adverse actions include changes in the "terms, conditions, or privileges of employment"—interpreting Title VII).

A transfer that does not change pay or rank can still rise to an actionable harm. *Muldrow*, 601 U.S. at 359. The Muldrow opinion provides that some additional harm is easily shown—"whether in money, time, satisfaction, schedule, convenience, commuting costs or time, prestige, status, career prospects, interest level, perks, professional

- 10 -

relationships, networking opportunities, effects on family obligations, or the like." *Id.* at 365 (Kavanaugh, J. concurring) (explaining the majority opinion). It is easy to infer or imagine that the lower machine position related to status, career prospects, interest level, perks, and professional relationships. *See Twombly,* 550 U.S. at 563 (a plaintiff receives the benefit of imagination consistent with the complaint). To the extent more needs to be alleged, Mr. Polite can satisfy any requirement in an amended pleading; nevertheless, requiring allegations that the position was a promotion is not necessary. Additionally, at the pleading stage, the identity of the decision-maker is not required. *See Cicalese v. Univ. of Texas Med. Branch,* 924 F.3d 762, 767 (5th Cir. 2019) (it is an error to require plaintiffs to plead more than the "ultimate elements"). Mr. Polite alleges sufficient facts to plausibly show harm by refusing to assign him to the Safety Team based on race.

**Machinist Position**

Mr. Polite had previous experience operating computer numerical control (CNC) machines similar to those operated by General Dynamics. Mr. Polite has over 35 years of professional painting experience in manufacturing operations. ¶105 Mr. Polite requested to be placed in a machinist position when he began working for General Dynamics. ¶102. Instead, General Dynamics assigned him to work in its paint shop operation with the option to move to machines. ¶107.

Although General Dynamics refused to recognize Mr. Polite as a machinist, it required him to work on CNC machine training, because no one else had the ability. ¶137.

- 11 -

Mr. Polite's prior CNC experience provided him with the ability to operate the machines. ¶138. Mr. Polite knew more than his supervisors and higher management concerning the machines. ¶139. General Dynamics assigned Mr. Polite to operate several (CNC) machines but refused to acknowledge him in the position or give him the commensurate increase in pay. ¶142. General Dynamics had Mr. Polite operating the CNC machines for about six months. ¶143.

Mr. Polite requested General Dynamics to allow him to continue to operate the CNC machines and assign him the position. ¶144. General Dynamics refused and replaced him with inexperienced new non-Black employees. ¶145. General Dynamics then required Mr. Polite to train them because the new employees were less qualified. ¶146. As previously outlined, identifying the decision-maker at the pleading stage is not required. Mr. Polite alleges sufficient facts to plausibly show harm by refusing to acknowledge he held a machinist position and refusing to allow him to remain in the position with the commensurate pay and status because of his race.

**Lead Paint Department Position**

Mr. Polite was the most skilled, trained, and experienced employee in the paint shop at General Dynamics's plant. ¶108. In July 2024, General Dynamics posted an opening for a new Paint Shop Lead Person position that paid more than Mr. Polite's Labor Grade 3 position. ¶112. General Dynamics interviewed Mr. Polite and he correctly answered all the technical questions asked of him. ¶113.

Mr. Yeager told Mr. Polite that he selected Mr. Polite for the lead position. ¶115. The position was considered a promotion. ¶116. Another General Dynamics supervisor, Parker O'Keefe, confirmed to Mr. Polite that he was selected for the promotion. ¶117. The promotion would result in an hourly rate increase of $3.40. ¶118. However, General Dynamics instead placed a person who was Hispanic with significantly less experience than Mr. Polite into the position. ¶119. Mr. O'Keefe told Mr. Polite that Mr. O'Keefe had personally seen the paperwork confirming that Mr. Polite was selected for the promotion to Paint Shop Lead Person. ¶121. Regardless of the supervisors' decisions, General Dynamics awarded Paint Shop Lead position to a Hispanic employee with less painting experience, skill, knowledge, and training. ¶122. The decision of the supervisors did not matter. General Dynamics proceeded with the discrimination anyway.

The Hispanic employee replacing Mr. Polite asked Mr. Polite if he would train him on paint shop operations. ¶124. When General Dynamics became aware that Mr. Polite was training the Hispanic employee, it removed Mr. Polite from training the Hispanic employee and assigned another employee to train him. ¶126.

According to General Dynamics at the time, to be eligible for a promotion to a Lead Person position the successful candidate must possess at least a Labor Grade 3 production classification, which Mr. Polite possessed. ¶126. However, the Hispanic employee who replaced Mr. Polite only possessed a lower Labor Grade 2 production classification. ¶128. Mr. Polite had over thirty years of relevant experience while the chosen Hispanic employee

- 13 -

only had about five years of experience. ¶129. These facts show a prima facie case under the McDonnell Douglas framework sufficient to raise a plausible claim for discrimination for failure to promote Mr. Polite to the Lead Position.

Although promised to be next in line for promotion to a Lead Position, General Dynamics placed another less experienced Hispanic employee in the Paint Shop Lead Person position when another position became available. ¶¶131-36. This happened two additional times. ¶¶149-50. These facts show a prima facie case under the McDonnell Douglas framework sufficient to raise a plausible claim for discrimination for failure to promote Mr. Polite to the Lead Position.

General Dynamics was aware that Mr. Polite was interested in the position, as evidenced by his conversations with management who said he had been chosen for the position even if General Dynamics countermanded the decision. Whether he applied is moot after he was chosen for the position and later promised to be chosen as next in line. Also, an application is not necessary if the company was already considering Mr. Polite for the position. *See Berry v. Texas Woman's Univ.*, 528 F. Supp. 3d 579, 609 (E.D. Tex. 2021) (Plaintiff's failure-to-promote claim survived when Plaintiff "pleaded sufficient facts giving rise to a reasonable inference that at least one position was not publicized and the company had a reason to consider [Plaintiff] for the position."). Furthermore, General Dynamics' repeated revocation of the promotion after promising the positions illustrates

the futility of any application, which also makes an application unnecessary. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366 (1977).

**Retaliation**

Mr. Polite complained to management that he was being discriminated against and denied positions in favor of less qualified non-Black employees. ¶151. General Dynamics began treating Mr. Polite worse and with hostility after he complained and still would not give him the pay or promotions he was promised. ¶152. General Dynamic's actions well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *See White*, 548 U.S. at 68. Mr. Polite has alleged facts sufficient for a retaliation claim. To the extent more facts are necessary, he can provide additional facts in an amended complaint.

**Constructive Discharge**

Mr. Polite alleges intolerable conditions that forced him to resign, including denial of commensurate compensation; job responsibilities outside of his job description; denial of promotions; severe and pervasive discriminatory conduct; a pattern of escalating mistreatment; refusal to investigate his complaints or take corrective action; retaliation when he complained; denial of adequate treatment for his work injury; retaliation; and forcing him to work while injured alongside openly hostile co-workers. ¶¶171-72.

## McKinlei Polite

### Discrimination

#### Human Resource Position

Ms. Polite, Mr. Polite's daughter, acknowledges that she does not have a claim at this time for the Human Resource position because General Dynamics chose a Black employee for the position before she reported discrimination.

#### Racial Comments

Ms. Polite's direct supervisor Jason Yeager, who is White, made an anti-Black statement. ¶195. After Mr. Yeager was informed that Ms. Polite's co-worker Kaden, who is a light-skinned Black person, was half-Black, Mr. Yeager stated, "I didn't think you had that kind in you." "Kind" referred to being Black. ¶196. Mr. Yeager provided no explanation for his anti-Black remark. ¶196. Mr. Yeager's anti-Black statement demonstrates anti-Black animus that perpetuates racial bias and shows that discriminatory attitudes are tolerated by General Dynamics.

Ms. Polite's Team Lead Ashlee (White female) advised Ms. Polite that Ashlee's former Day Shift Team Lead Brad Pierce (White male) also made racist statements. ¶198. Mr. Pierce denigrated Ms. Polite and another Black female coworker, named Yeurie, behind their backs. ¶199.

General Dynamics knew about Mr. Pierce's comments because Team Lead Ashlee told Ms. Polite's manager Jeremiah (White male) that she does not feel comfortable working with Mr. Pierce because of his racist behavior. ¶201.

**Safety Position**

Ms. Polite has both an associate degree and a bachelor's degree. ¶179. General Dynamics knew that Ms. Polite wished to have salaried position and had the appropriate credentials. ¶182. Ms. Polite expressed interest in a safety position, which would have been a salaried position, also, but General Dynamics again denied her the open position despite her qualifications. ¶187. General Dynamics instead gave the position to a Hispanic male with less education and less experience. ¶188.

Ms. Polite made her interest in the safety role (or any salaried role) clear to General Dynamics but was not given an opportunity to apply. This means that her lack of application does not bar her from a failure-to-promote claim. *See Berry v. Texas Woman's Univ.*, 528 F. Supp. 3d 579, 609 (E.D. Tex. 2021). Ms. Polite had the necessary educational background and qualifications for these roles.  She was denied these roles, and the roles instead went to non-Black employees with less education and less experience. ¶¶ 189-93. These comparators create a reasonable inference of discriminatory failure to promote. These facts show a prima facie case under the McDonnell Douglas framework sufficient to raise a plausible claim for discrimination for failure to promote Ms. Polite to the Safety Position.

**Salaried Paint Position**

When a salaried position became available in the paint department, General Dynamics again recruited a Hispanic male to fill the position, despite Ms. Polite expressing interest in any salaried position and already working in the paint department. ¶189. Ms. Polite had more education and experience than the Hispanic employee General Dynamics selected for the position. ¶190.

General Dynamics would comply with employees' requests to transfer out of the paint department, except for the Black employees, including Ms. Polite. ¶192. These facts show a prima facie case under the McDonnell Douglas framework sufficient to raise a plausible claim for discrimination for failure to promote Ms. Polite to the Salaried Paint Position.

**Retaliation**

Ms. Polite complained that a co-worker, Kelby, was behaving discriminatorily against her and another Black employee, including by calling them both lazy. ¶215. She also engaged in protected activity by filing this lawsuit. ¶218. After, General Dynamics banned her and other employees from the office and front break room (the temperature-controlled areas) in retaliation. ¶219. Her supervisor also openly mocked her in a meeting and spread rumors about her after her protected activity. ¶¶221-25. These actions would dissuade a reasonable employee from complaining of race discrimination. *See White*, at 68. Mr. Polite

- 18 -

has alleged facts sufficient for a retaliation claim. To the extent more facts are necessary, she can provide additional information in an amended complaint.

## Gary Roundtree

## Discrimination

### Disparate Pay

General Dynamics assigned Mr. Roundtree the role of Production Lead, misrepresented his job responsibilities, and refused to pay compensation commensurate with the lead position. ¶¶232, 234-35. Mr. Roundtree alleges that General Dynamics did not pay him commensurate with his Lead position. ¶236. An inference can be made that General Dynamics paid others, including non-Black Lead employees, correctly and therefore paid them more than Mr. Roundtree. This may be verified by General Dynamics' payment records. *See Innova Hosp.*, 892 F.3d at 730. These allegations are sufficient to present a plausible claim of disparate payment.

### Disparate Accommodations

General Dynamics management banned Black employees from entering the air-conditioned front office where management works and deliberately refused to provide electric fans on the shop floor to help relieve employees from the excessive heat caused by the 100+ degree temperature outside the plant. ¶237. General Dynamics did not subject non-Black employees to these same restrictions. ¶238. Management and co-workers at

- 19 -

General Dynamics were openly hostile to Mr. Roundtree and other Black employees. ¶242. These allegations are sufficient to present a plausible claim of disparate accommodations.

**Retaliation**

Roundtree complained of race discrimination by General Dynamics on multiples occasions to management, Human Resources, and all the way up to the director of operations. ¶¶240-41, 244-52. He explicitly mentioned race in these complaints. As soon as Mr. Roundtree complained about General Dynamics' discriminatory treatment of Black employees and unsafe working conditions, General Dynamics dissolved his safety team, effectively demoting him. ¶244.

In Summer 2024, after Mr. Roundtree escalated his complaints about race discrimination to the director of operations and the management representative, General Dynamics reduced his hours, banned him from the air-conditioned break room, and removed his responsibilities in retaliation for his complaints. ¶¶245-57. Mr. Roundtree has alleged facts sufficient for a retaliation claim. To the extent more facts are necessary, he can comply with an amended complaint.

**Constructive Discharge**

General Dynamics demoted Mr. Roundtree by dissolving his safety team and reducing his job responsibilities. ¶¶245-46; 257-59. Demotion and reduction of responsibilities are two of the main factors considered for constructive discharge claims.

- 20 -

*See Bye*, 49 F.4th at 924. This was in addition to inhumane work conditions and persistent discrimination and retaliation. Together, these facts make constructive discharge plausible.

**Kennie Brown**

**Discrimination**

### Demotion Transfer

Mr. Brown is an expert welder with decades of experience. ¶¶276-77. The reason Mr. Brown accepted employment at General Dynamics was his desire to work as a welder. ¶278. Within weeks of his starting, General Dynamics moved Mr. Brown from his position as a welder. ¶279. General Dynamics hired two 19-year-old White male employees to replace Mr. Brown in the welding department. ¶280. The White employees had much less welding experience than Mr. Brown. ¶281. General Dynamics then transferred Mr. Brown to the forging department. ¶283. The positions in the forging and phosphate department were lower levels and less prestigious than the level of Mr. Brown's initial welding position. ¶288. These allegations are sufficient to present a plausible claim of discriminatory demotion.

### Discriminatory Treatment in Forging

The production manager in General Dynamic's forging department called Mr. Brown a "thug." ¶289. The production manager gave preferential treatment to the Hispanic employees. ¶290. The Hispanic employees mocked other employees who spent time with Mr. Brown and other Black employees for "hanging with the Blacks." ¶291.

- 21 -

These allegations are sufficient to present a plausible claim of discriminatory treatment in the forging department.

**Retaliation**

Mr. Brown complained to General Dynamics that General Dynamics had removed him from the welding position he was hired for and replaced him with less experienced White employees. ¶284. He specifically mentioned race by stating White employees replaced him, raising concerns that this adverse treatment was because of his race. ¶284. After he made this complaint, General Dynamics allowed a non-supervisory employee to involuntarily transfer him once again to the phosphate department, another lower position. ¶285-86. These allegations are sufficient to present a plausible claim of retaliation.

## Response to Motion to Sever

The movant must make a showing that he will be *seriously* prejudiced without a separate trial. *See Lusk v. Pennzoil United, Inc.*, 56 F.R.D. 645 (1972). Fed. R. Civ. P. 42(b) expresses three separate justifications for bifurcation.  The burden is on the party seeking separate trials to prove that separation is necessary. *See McKinney v. Wulfeck*, No. 421CV00205JFHJFJ, 2023 WL 2947546, at *1 and 3 (N.D. Okla. Apr. 14, 2023). A court may separate issues if (1) it would avoid prejudice, (2) it would be convenient to do so, *or* (3) it would be economical or would expedite the litigation to do so. *See Organic Chemicals, Inc. v. Carroll Products, Inc.,* 86 F.R.D. 468, 469 (W.D.Mich.1980). The Fifth Circuit has stated that for separate trials to be appropriate, the issues to be tried must be so distinct and

- 22 -

separable from the others that a trial of them alone may be had without injustice. *See Guedry v. Marino*, 164 F.R.D. 181, 186 (E.D. La. 1995). In *Guedry*, the court articulated that even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice. *Id.* (quoting *Moorhouse v. Boeing Co.*, 501 F. Supp. 390, 391 (E.D. Pa. 1980), *aff'd*, 639 F.2d 774 (3d Cir. 1980)). This principle was also emphasized in *Reid v. General Motors Corp.*, where the court stated that the issue to be tried must be distinct and separable from the others to avoid injustice. *See Reid v. General Motors Corp.,* 240 F.R.D. 260 (2007).

The Court can charge the jury to answer specific interrogatories regarding issue of liability and damages for each individual Plaintiff. Those interrogatories that address liability will ask the jury to answer particular questions regarding liability and damages for each Plaintiff, and to not give the Plaintiffs' individual claims more credence because they are asserted by five claimants rather than one. Any concern about potential risk of jury confusion can be cured through jury instructions and interrogatories. The standard trial procedure of using precise jury instructions and questions is designed to avoid the type of theoretical prejudice Defendant imagines in its motion. The Court can also instruct the jury on the law necessary for the jury to answer specific factual questions in issue at trial and Defendant has the opportunity to propose to the Court instructions which address the

- 23 -

issues the Defendant raises in its motion for separate trials and an opportunity to address those issues as they may arise during trial.

The potential of jury confusion must also be weighed against other important considerations. In *Alaniz v. Zamora-Quezada*, the court upheld the denial of a motion for separate trials, noting that the potential for jury confusion was outweighed by considerations of judicial economy and the minimal prejudice to the defendant. *Alaniz v. Zamora-Quezada*, 591 F.3d 761 (2009), at *774. The court highlighted that all claims were related and involved similar allegations of continuous discrimination by the same defendant. *Id.*

The members of the jury, the Court, the parties, the witnesses, and those who want to observe the trial, would be unnecessarily inconvenienced by multiple trials. Separate trials would not expedite conclusion of this litigation or serve any economic interest, so separating the trial would not be appropriate under Fed. R. Civ. P. 42(b) for this additional reason. A single trial for this matter is expected to last not more than two weeks. Separate trials would involve many of the same witnesses testifying in multiple trials and would include the extra time for each jury to be selected and to deliberate, with each trial lasting four to five days.

Plaintiffs' experiences at General Dynamics overlap in management structure, supervisory personnel, discriminatory practices, and witnesses. Trying Plaintiffs' claims together promotes judicial economy and avoids unnecessary delay, additional expense, and

- 24 -

prejudice. Multiple Plaintiffs reported to or interacted with the same supervisors, creating overlapping experiences with the same decision-makers.

Plaintiffs consistently describe experiencing the same discriminatory practices, demonstrating a pattern that is best understood when considered collectively. This included prohibition from air-conditioned spaces, denial of promotions, hostile attitudes, and continued disparate treatment and retaliation.

Counsel for plaintiffs has tried cases with multiple plaintiffs. Their experience is that they are quicker and more efficient without causing confusion to the jury. For the reasons given, the motion should be denied.

### Response to Request for Attorney's Fees

General Dynamics does not present evidence upon which fees can be based. General Dynamics cannot show Plaintiffs' claims are frivolous, unreasonable, or groundless. *See Myers v. City of West Monroe,* 211 F.3d 289, 292 (5th Cir. 2000) To the contrary, Plaintiffs' claims are plausible and to the extent they are insufficient, are not baseless. Plaintiffs alleged prima facie cases which exceeded pleading requirements.

Plaintiffs even made the extra effort to prevent a second motion to dismiss by addressing General Dynamics' concerns raised in its first motion. This was an effort to save this Court's resources. However, it appears that regardless of the detail provided, General Dynamics will not be satisfied with any amendment and will continue to delay this case by filing successive motions to dismiss until it receives a denial.

- 25 -

**Conclusion**

WHEREFORE, Plaintiffs request that the court deny the motion to dismiss or in the alternative, allow Plaintiffs to amend the complaint to address any deficiencies. Plaintiffs further request that the Court deny the motion to sever and for attorneys' fees.

Respectfully submitted,

*/s/ Brian P. Sanford*
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com
Chris Antone
Texas Bar No. 790186
cantone@sanfordfirm.com

**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document has been served via electronic filing on March 9, 2026, to counsel of record.

*/s/ Brian Sanford*

- 26 -